## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | |
|---|---|
| **A.E. ELECTRIC, INC.**<br>8965 S. River Road<br>Waterville, Ohio 43566<br><br>    Plaintiff,<br><br>v.<br><br>**UNITED STATES OF AMERICA**<br>*Serve*:  David M. Toepfer<br>    U.S. Attorney's Office<br>    Four Seagate, Third Floor<br>    Toledo, Ohio 43604<br><br>    Defendant. | Case No.:<br><br>Judge:<br><br>**COMPLAINT WITH JURY DEMAND**<br>**ENDORSED HEREON**<br><br>Zachary J. Murry (0087421)<br>BARKAN & ROBON LTD.<br>1701 Woodlands Drive<br>Suite 100<br>Maumee, Ohio 43537<br>Phone:  (419) 897-6500<br>Fax:    (419) 897-6200<br>zmurry@barkan-robon.com<br><br>*Attorney for Plaintiff* |

Now comes the Plaintiff, A.E. Electric, Inc., by and through undersigned counsel, and pursuant to 26 U.S.C. ("I.R.C.") §7422, hereby submits this Complaint for Refund against the United States of America ("Defendant"), seeking a refund of an employee retention credit, interest pursuant to I.R.C. §6611, and its reasonable costs and attorneys' fees pursuant to I.R.C. §7430. In support of its cause, Plaintiff declares and states as follows:

### I. JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter because this is a claim against the United States of America and brought under federal law. This Court specifically has jurisdiction by reason of 28 U.S.C. §§1331 (civil action arising under the Constitution, laws, or treaties of the United States); 1340 (civil action arising under Act of Congress providing for internal revenue);

1346(a)(1) (civil action against United States for recovery of tax or other sum wrongfully collected under internal revenue laws); and I.R.C. §7422 (civil action for refund).

2. Venue is proper in the Northern District of Ohio, Western Division, pursuant to 28 U.S.C. §§1391 and 1402(a) as Plaintiff is a for-profit corporation with its principal place of business in Grand Rapids, Ohio, geographically situated within this District and Division.

## II. INTRODUCTION

3. This is a claim for an unpaid employee retention credit, which through no legal fault of Plaintiff has been unpaid by the IRS and for which the Plaintiff reasonably believes may not be paid for years, if ever, unless the Plaintiff files this litigation.

4. On or about March 27, 2020, in response to the COVID-19 pandemic, congress passed the Coronavirus Aid Relief and Economic Security Act ("the CARES Act"). The CARES Act created an employee retention credit ("E.R.C.") on eligible wages paid between March 12, 2020, and December 31, 2020. The credit provided 50 percent of up to $10,000 of qualified wages.

5. The credit was available if the business's operations were fully or partially suspended due to a government order (Suspension Order Method) in any quarter or if the business had an initial 50 percent or more reduction in gross receipts against the same quarter from 2019, and the eligibility remained until the second quarter that did not maintain a 20 percent or more reduction in subsequent quarters (Gross Receipts Test). As explained and described on the IRS's website, to qualify and remain qualifying under the Gross Receipts Test:

- For 2020, you begin qualifying in the quarter when your gross receipts are less than 50% of the gross receipts for the same quarter in 2019. You no longer qualify

in the quarter after the quarter in which your gross receipts are more than 80% of the same quarter in 2019.

- For example: Your gross receipts were $100 in each quarter of 2019. They were $45 in the second quarter of 2020, $85 in the third quarter and $75 in the fourth quarter. Under these facts, you would qualify for the second and third quarter but not the fourth.

- For 2021, the gross receipts for the quarter must be less than 80% of the gross receipts for the same quarter in 2019.

See Frequently asked questions about the Employee Retention Credit on the Internal Revenue Service website.

6. Employers with more than 100 full-time employees were "large employers". Large employers' most significant limitation was they could only use wages paid to employees to not work (not all qualified wages). Plaintiff at all times has employed less than 100 employees and is not a large employer.

7. Claiming an E.R.C. is effectuated through the filing of Forms 941-X (Adjusted Employer's Quarterly Federal Tax Return or Claim for Refund).

8. On or about December 27, 2020, congress passed the Consolidated Appropriations Act ("C.A.A."). The C.A.A. extended eligibility for E.R.C. through June 30, 2021. Moreover, the E.R.C. became worth 70 percent of up to $10,000 of qualified wages per employee per quarter instead of annually. The definition of Large Employer was also changed to include those with more than 500 full-time employees. Plaintiff has always had less than 500 employees and is not a large employer.

3

9.      On or about March 11, 2021, Congress passed the American Rescue Plan Act ("A.R.P.A."). The A.R.P.A. extended the E.R.C. through December 31, 2021. Moreover, it provided a carveout for financially distressed companies.

10.     On or about September 14, 2023, the Internal Revenue Service ("I.R.S." or "the Service") announced a mortarium through, at the minimum, the end of 2023 on all E.R.C. claims due to concerns of inaccurately filed claims and the related processing of said claims.

11.     On or about October 19, 2023, the Service announced a special withdrawal process to help those who filed an E.R.C. claim and are concerned about its accuracy. This allowed employers to withdraw an E.R.C. claim and in turn avoid future repayment, interest, and penalties.

12.     As of the date of the filing of this complaint, some claims for E.R.C. are still not being paid by the Service even though the mortarium has ended and the funds are due on said claims. Specifically, since the mortarium has ended, the Biden administration stated that the rate of paying claims would be slower than before the moratorium as a means to prevent fraud.

13.     Moreover, since the Trump administration was sworn in, upon information and belief based on multiple news reports related to actions impacting the IRS and related to the Department of Government Efficiency (commonly known as DOGE), the number of employees processing E.R.C Claims has been significantly reduced.

14.     As of the date of this litigation, funds for E.R.C Claims remain approved by Congress and are being processed by the executive branch. However, the speed of processing claims with the smaller staff doing so is unclear. Therefore, Plaintiff reasonably believes that without filing this litigation, it might not be paid for years, if ever.

### III.    FACTUAL BACKGROUND

15.    Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

16.    At all relevant times, Plaintiff was a for-profit corporation with its principal place of business in Grand Rapids, Ohio. Plaintiff is in the business of providing electrical contracting and electrician services, as both a prime and subcontractor, on residential and commercial matters across Northwest Ohio.

17.    Plaintiff wanted to continue to provide electrical contracting services throughout the COVID-19 pandemic during 2019 through 2021. However, due to workplace and other restrictions ordered by the government, as detailed below, Plaintiff's operations were suspended by government orders and then only partially reopened. Plaintiff suffered a loss of revenue because of these COVID-related closures.

18.    Plaintiff sustained a full or partial suspension of operations due to an order from an appropriate governmental authority limiting commerce, travel, or group meetings because of COVID-19, including but not limited to, the second quarter of 2020 and the first quarter of 2021. The government order may be local, state, or federal level order. In this case, the qualifying governmental orders caused a partial suspension of a Plaintiff's trade or business operations.

19.    The governmental orders compelled a modification of business operations that resulted in "more than a nominal portion" of its operations suspended; defined as a 10% or greater reduction in ability to provide goods or services.

20.    As a result of compliance with the governmental order, Plaintiff's business suffered a significant disruption, constituting a more than nominal impact on its business.

21.    Plaintiff employed on average 26 or fewer full-time employees in 2019 through 2021.

22.    Plaintiff paid qualified wages to its employees from 2020 through 2021.

5

23.     Plaintiff's operations were affected by governmental action that closed businesses and other operations in the areas where Plaintiff provides services for the employment tax quarters ending on June 30, 2020, and March 31, 2021.

24.     Accordingly, on or about the end of September 2023, Plaintiff submitted an E.R.C. claim of $28,156.57 through the filing of a Form 941X, as it relates to the employment tax quarter ending June 30, 2020, and an E.R.C. claim of $150,755.33 as it relates to the employment tax quarter ending March 31, 2021. Copies of these Forms are filed herewith as Exhibits 1 and 2, respectively, and are incorporated herein by reference. The E.R.C. claims for the employment tax quarters ending on June 30, 2020 and March 31, 2021, were received by the Service on or before October 4, 2023.

25.     Plaintiff maintained adequate and accurate documentation to support the modifications to its business operations directly causing more than nominal impact on its business  for the employment quarters provided above.

26.     Plaintiff is therefore an eligible employer under all applicable statutory provisions including the Internal Revenue Code and the Cares Act, as amended by A.R.P.A.

27.     As of the date of the filing of this Complaint, Plaintiff has not received payment of any refund claim.

28.     Pursuant to the foregoing, the Service has failed to fulfill its duty by withholding the funds related to Plaintiff's E.R.C. claim without justification.

### IV.     LEGAL BACKGROUND FOR FILING

29.     Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

30.     This is a civil action arising under the internal revenue laws of the United States for the refund of federal income taxes and related interest due to Plaintiff. Specifically, as stated

6

more fully supra, Plaintiff complied with the requirements of I.R.C. §§7422 and 6532 by timely filing a claim for refund via Form 941-X (Adjusted Employer's Quarterly Federal Tax Return or Claim for Refund) for the periods at issue.

31. Plaintiff has filed its claims within the two years of payment as specified in I.R.C. §§6511 and 6532.

32. More than six months have elapsed since Plaintiff timely filed its claims. Moreover, as to the claim for refund for the period ending June 30, 2020, Plaintiff was notified by the IRS that its claim was disallowed. A copy of this correspondence is attached hereto as exhibit 3, and incorporated herein by reference. As to the claim for refund for the period ending March 31, 2021, Plaintiff has not been notified by the I.R.S. that its claims were allowed.

33. Therefore, Plaintiff satisfied the requirements of I.R.C. §§6532 and 7422.

## V. CLAIMS FOR RELIEF

### First Cause of Action
### Claim for Refund

34. Plaintiff incorporates each foregoing and succeeding paragraph as if fully set forth herein.

35. Plaintiff is entitled to its E.R.C. claims for the employment tax quarters ending June 30, 2020, and March 31, 2021, that were filed on or about the end of September 2023, and remain unpaid by the Service.

36. Section 2301 of the CARES Act allows a credit (employee retention credit or credit) against applicable employment taxes for eligible employers, including tax-exempt organization, that pay qualified wages, to some or all employees after March 12, 2020, and before January 1, 2021. Section 207 of the Relief Act amends section 2301 of the CARES Act to extend the application of the employee retention credit to qualified wages paid after December

7

31, 2020, and before July 1, 2021, and to modify the calculation of the credit amount for qualified wages paid during that time.

37. Before the end of September 2023, Plaintiff paid all amounts due for the employment tax quarter ending on June 30, 2020. In total, Plaintiff paid $28,156.57 in employment tax to the I.R.S. for the employment tax quarter ending on June 30, 2020.

38. Before the end of September 2023, Plaintiff paid all amounts due for the employment tax quarter ending on March 31, 2021. In total, Plaintiff timely paid $150,755.33 in employment tax to the I.R.S. for the employment tax for quarter ending March 31, 2021.

39. On or about the end of September 2023, Plaintiff filed Forms 941-X for the employment tax quarters ending June 30, 2020, and March 31, 2021, to claim refunds related to the E.R.C. to which Plaintiff was lawfully entitled in the amount of One Hundred Seventy-Eight Thousand Nine Hundred Eleven and 90/100 dollars ($178,911.90).

40. Plaintiff's suit under L.R.C. 57422(a) is filed in accordance with I.R.C. §6532(g).(1); i.e., more than six months have elapsed since the filing of Plaintiff's Form 941-X claim for refund with the I.R.S. and no refund having been received.

41. Accordingly, Plaintiff is due a refund of its E.R.C. for federal employment tax for the quarters ending June 30, 2020, and March 31, 2021, is the sole owner of the claim for refund, and has made no assignment of its claim.

**Second Cause of Action**
**Claim for Interest**

42. Plaintiff incorporates each foregoing and succeeding paragraph as if fully set forth herein.

43. As of the date of this filing, Plaintiff has received no correspondence, erroneous correspondence, or conflicting correspondence from the Service regarding the processing and or

8

payment of its E.R.C. claims for the employment tax quarters ending June 30, 2020, and March 31, 2021.

44.     Pursuant to I.R.C. 56611, interest shall be allowed and paid upon any overpayment in respect of any internal revenue tax at the overpayment rate established under section 6621. Moreover, pursuant to I.R.C. §6611(b), such interest shall be allowed and paid, in the case of a refund, from the date of the overpayment to a date (to be determined by the Secretary) preceding the date of the refund check by not more than 30 days, whether or not such refund check is accepted by the taxpayer after tender of such check to the taxpayer. The acceptance of such check shall be without prejudice to any right of the taxpayer to claim any additional overpayment and interest thereon.

45.     On or about the end of September 2023, Plaintiff filed its E.R.C. claims for the employment tax quarters ending June 30, 2020, and March 31, 2021.

46.     As of the date of this filing, Plaintiff has not received its E.R.C. refunds for the employment tax quarters ending June 30, 2020, and March 31, 2021, it received a check for the partial refund classified for the tax period of the 1st quarter 2021, but the amount was incorrect and such amount was likely for the tax period of the 2nd quarter of 2020. Such check was returned to the IRS at the direction of an IRS representative. Plaintiff has not received correspondence from the Service as to why said erroneous check was not corrected and appropriate payment effectuated; or, alternatively, it has received conflicting notices as to the processing of the E.R.C claim.

47.     Accordingly, Plaintiff is statutorily due interest for its E.R.C. claim for the employment tax quarters ending June 30, 2020, and March 31, 2021, until the date payment is made.

**Third Cause of Action**
**Claim for Attorney Fees and Costs**

48.      Plaintiff incorporates each foregoing and succeeding paragraph as if fully set forth herein.

49.      As of the date of this filing, Plaintiff has not received any correspondence from the Service regarding the processing or payment of its E.R.C. claims for the employment tax quarters ending June 30, 2020, and March 31, 2021.

50.      Pursuant to I.R.C. §7430, in any administrative or court proceeding which is brought by or against the United States in connection with the determination, collection, or refund of any tax, interest, or penalty under this title, the prevailing party may be awarded a judgment or a settlement for reasonable administrative costs incurred in connection with such administrative proceeding within the Internal Revenue Service, and reasonable litigation costs incurred in connection with such court proceeding.

51.      On or about April 24, 2026, Plaintiff filed its Complaint against the United States, in connection with its request for a refund.

52.      Accordingly, Plaintiff requests an award of costs and attorneys' fees as incurred as a result of the administrative and litigation-based representation as required to facilitate a resolution to this claim for refund.

## VIII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court award it the following relief:

A. Enter judgment for Plaintiff in the amount of $178,911.90;

B. Enter judgment for Plaintiff for interest that is unpaid by the United States;

10

C.  Enter judgment for Plaintiff for reasonable attorneys' fees including but not limited to litigation and administrative costs; and

D.  Award all such other relief to which Plaintiff is entitled to at law or in equity.

Dated: April 24, 2026            Respectfully submitted,

**BARKAN & ROBON LTD.**

By: /s/  Zachary J. Murry
       Zachary J. Murry (0087421)
       *Attorney for Plaintiff*

## JURY DEMAND

Plaintiff hereby demands a trial by jury for all issues so triable.

Respectfully submitted,

**BARKAN & ROBON, LTD.**

By: /s/  Zachary J. Murry
       Zachary J. Murry (0087421)
       *Attorney for Plaintiff*